UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERREK BANKS,

                    Petitioner,             Case No. 1:21-cv-42

v.                                     Honorable Hala Y. Jarbou

LES PARISH,

                    Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner   Derrek   Banks   is   incarcerated   with   the   Michigan   Department   of

Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  On

April 23, 2018, Petitioner pleaded guilty in the Kent County Circuit Court to perjury during an

investigative subpoena examination, in violation of Mich. Comp. Laws § 767A.9.  On June 14,

2018, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10,

to a prison term of 16 to 80 years, to be served consecutively to a term of imprisonment for second-

degree home invasion, for which Petitioner was on parole at the time he committed perjury.

On January 14, 2021, Petitioner filed his habeas corpus petition raising one ground

for relief, as follows:

> I.     Petitioner's minimum sentence of sixteen years, for . . . investigative
> subpoena life offense perjury is unconstitutional, cruel and unusual because
> it is "significantly disproportionate" to the crime committed.

(Pet., ECF No. 1, PageID.5.)  Petitioner's habeas brief suggests at least two additional issues:

> II.    [T]he trial court judge violated his Sixth Amendment right to a trial by jury
> by using, to enhance his sentence, facts that had not been admitted by
> Petitioner or found by a jury beyond a reasonable doubt.

> III.   There was much erroneous sentencing information in the instant
> case . . . the trial court relied on incomplete information.

(Pet'r's Br., ECF No. 2, PageID.23.)

The Michigan Court of Appeals described the facts underlying Petitioner's offense,

and his sentence, as follows:

> Defendant pleaded guilty to perjury.  At the plea hearing, defendant
> admitted that on January 22, 2018, he had been placed under oath and gave
> testimony pursuant to a prosecutor's investigative subpoena.  The subpoena
> concerned an investigation into the 2018 murder of Curtis Swift, who allegedly was
> a passenger in a car that was involved in a drive-by shooting and homicide in 2013.
> Cameron Wright was the alleged shooter in the 2013 murder, which was also being

2

investigated.  According to the prosecution, Wright has now been charged with both the 2013 killing and the 2018 murder of Swift.  The prosecution theorized that defendant was a friend or acquaintance of Wright's and was complicit in the Swift homicide.  Swift was supposedly murdered to prevent him from testifying against Wright about the 2013 shooting.

Defendant admitted at the plea hearing that he made false statements under oath to the prosecutor regarding his knowledge of and contact with Wright.  The prosecution submitted a transcript of text messages exchanged between defendant and Wright on the day of Swift's murder, an illustration representing defendant's location at the time the text messages were being sent, a transcript of defendant's testimony in relation to the investigative subpoena, and numerous misconduct reports relative to defendant's behavior while in prison.  Defendant did not challenge the submission of these documents.  The prosecution urged the trial court to depart from the minimum sentence guidelines range of 51 to 106 months considering that defendant's falsehoods sought to obstruct, hinder, and delay two murder investigations and that defendant was likely involved in the murder of Swift.  For the reasons discussed below, the trial court imposed a minimum sentence of 16 years (192 months).

*       *       *

Here, in the process of imposing the sentence, the trial court noted that defendant was 26 years old, that he had one prior felony conviction, that he had a juvenile record, that he had served time in prison, that he had been on probation and parole in the past, and that he lied numerous times under oath with respect to his testimony elicited by the prosecutor pursuant to the investigative subpoena.  The trial court next acknowledged that it was departing from the guidelines range and that it fully understood that the departure had to be reasonable and proportionate under *Lockridge* and *Milbourn*.  The court expressed that the departure sentence being imposed indeed satisfied the proportionality requirement.  In support, the trial court proceeded to state that the guidelines did not adequately address the circumstances of this case and that it was adopting the reasons favoring departure set forth in the prosecutor's sentencing memorandum and those voiced by the prosecutor at the sentencing hearing.  The trial court also observed that defendant's record in prison, which included over 40 misconduct citations, many of which involved violence or threats of violence, was "outrageous."  Finally, touching on the subject of the prospects of rehabilitation, the court opined that defendant probably did not have the capacity to live in society and to conform to society's laws.

*People v. Banks*, No. 345161, 2019 WL 4180179, at *1–2 (Mich. Ct. App. Sept. 3, 2019).

Petitioner does not challenge the facts described by the Michigan Court of Appeals.  Indeed, the

facts stated by Petitioner in his brief are identical to the facts stated by the appellate court.  (Pet'r's Br., ECF No. 2, PageID.28.)

Petitioner, with the assistance of counsel, applied for leave to appeal his sentence to the Michigan Court of Appeals.  That court granted leave by order entered October 12, 2018. *People v. Banks*, No. 345161 (Mich. Ct. App. Oct. 12, 2018), available at http://publicdocs. courts.mi.gov/coa/public/orders/2018/345161(8)_order.pdf.  Petitioner challenged his sentence as unreasonable and disproportionate.  (Pet., ECF No. 1, PageID.13.)  On September 3, 2019, the court of appeals issued its opinion rejecting Petitioner's arguments and affirming the trial court.

Petitioner, again with the assistance of counsel, filed a timely application for leave to appeal to the Michigan Supreme Court, raising the same issue he raised in the Michigan Court of Appeals.  By order entered February 4, 2020, the Michigan Supreme Court denied leave to appeal.  *People v. Banks*, 937 N.W.2d 671 (Mich. 2020).  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)

Petitioner then returned to the trial court.  He filed a motion for relief from judgment that was denied on July 22, 2020.  (*Id*., PageID.3-5.)  He raised the same issue regarding the disproportionate nature of his sentence; however, this time, he expressly stated that his disproportionate sentence violated the Eighth Amendment.  (*Id*., PageID.14.)  He claims that specific issue was not raised on his direct appeal because of ineffective assistance of appellate counsel.  (*Id*., PageID.5.)

To the extent that the issue Petitioner raised in his motion for relief from judgment is substantively different than the issue he raised on direct appeal, Petitioner has not pursued that "different" issue through all levels of the Michigan Court system.  He reports that he did not appeal

4

the trial court's decision further because he "raised the same issue on direct [appeal]." (Pet., ECF No. 1, PageID.4.)

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the

Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.      Discussion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

Fair presentation has a substantive component and a procedural component.  With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern.  *Picard*, 404 U.S. at 277-78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993).  With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been fairly presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970). It does not appear that Petitioner raised his disproportionate sentence claim as an Eighth Amendment claim on direct appeal. Moreover, there is nothing in the materials Petitioner has provided that suggests he raised his Sixth Amendment claim or his due process claim—that the court sentenced him based on inaccurate information—at any level of the state court system.

Failure to exhaust state court remedies is only a problem if a state court remedy remains available for petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to Petitioner, his failure to exhaust does not bar relief; but where fair presentation has failed because of procedural improprieties, the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.* Other courts have concluded that the doctrine of procedural default bars consideration of the merits of a claim in this context:

> Following the state trial court's denial of Hatfield's motion for relief from judgment, Hatfield had only six months to appeal. *See* Mich. Ct. R. 6.509(A), 7.205(G)(3). As the state trial court denied Hatfield's motion in 2015, six months has long since passed and, as noted, Hatfield has not appealed. Moreover, Hatfield cannot file a second motion for relief from judgment . . . absent a showing of new evidence not discovered prior to his first motion or a retroactive change of law since his first such motion. *See* Mich. Ct. R. 6.502(G). And there is no reason to think that Hatfield could make any such showing . . . . Thus, it appears that Hatfield cannot now exhaust his claim . . . . It follows that the claim is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (describing two types of procedural default).

*Hatfield v. McKee*, No. 15-10101, 2018 WL 1254947, at *5-6 (E.D. Mich. Mar. 12, 2018); *see also Sturgess v. Berghuis*, No. 5:06-cv-14234, 2008 WL 2937784, at *10 (E.D. Mich. Jul. 24,

2008) ("Petitioner failed to timely file his application under that rule and the Michigan Court of Appeals rejected his application on that basis.  The procedural rule relied upon by the Michigan Court of Appeals was firmly established and regularly applied at the time of Petitioner's default.") (citations and footnote omitted); *McDaniels v. Prelesnik*, No. 08-cv-11548, 2015 WL 3441150, at *7 (E.D. Mich. May 28, 2015) ("[T]he Michigan Court of Appeals denied his delayed application for leave to appeal as untimely under Michigan Court Rule 7.205(F)(3) . . . the state court rule[ is] an adequate and independent state ground for denying review of McDaniels' federal constitutional claims.").

Petitioner finds himself in the same position as petitioner Hatfield.  He has not raised his Eighth Amendment claim in the Michigan Court of Appeals or the Michigan Supreme Court, and he has not raised his Sixth Amendment or due process claims in any Michigan court. The time to appeal the trial court's Eighth Amendment decision has recently passed.  Mich. Ct. R. 6.509(A), 7.205(G)(3).  Petitioner cannot file a second motion for relief from judgment to raise his federal habeas claims because those claims do not depend on new evidence or a retroactive change in the law.  He has no further state law remedy.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."),

and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Here, the procedural default issue raises more questions than the case on the merits; therefore, the Court will proceed as if there were no procedural default or as if Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

### A.     Sixth Amendment claim

Petitioner complains that the trial court used judge-found facts when sentencing Petitioner in violation of his Sixth Amendment right to a jury.  Petitioner's presentation of the law in his brief is taken directly, word-for-word, from the Court's analysis of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, in prior opinions.  *Compare* (Pet'r's Br., ECF No. 2, PageID.23–25), *with, e.g., McKinney v. Burt*, No. 1:19-cv-76, 2019 WL 1219144, at *7 (W.D. Mich. Mar. 15, 2019).  Rather than simply referring to Petitioner's brief, the analysis is set forth below.

Petitioner bases his argument on the line of cases beginning with *Apprendi*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under

10

which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held

that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule

that any fact that increases the maximum sentence must be "admitted by the defendant or proved

to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at

303).

        Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of

cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502

(Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing

guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-

finding beyond facts admitted by the defendant or found by the jury to score offense variables []

that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870

N.W.2d at 506 (emphasis in original).  The Court's remedy for the unconstitutionality of the

Michigan guidelines was to sever and strike the mandatory component of the guidelines and make

the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that

the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever

only the mandatory component, still requiring courts to consider the guidelines, but making them

advisory and subject to review for reasonableness)).

        On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis.

*Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018).  The *Robinson* court held that the Supreme

Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing

scheme was unconstitutional.  *Robinson*, 901 F.3d at 714.  The court reasoned that, "[]a]t bottom,

Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to

increase mandatory minimum sentences.  *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, Petitioner was sentenced in 2018, more than five years after the Supreme Court decided *Alleyne*.  *Alleyne* therefore was clearly established at the time of Petitioner's sentence.  However Petitioner also was sentenced more than three years after *Lockridge* was decided.  As a result, at the time Petitioner was sentenced, the sentencing guidelines no longer were mandatory, but advisory only.

Purely advisory applications of the guidelines do not run afoul of the Sixth Amendment.  *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Reign v. Gidley*, 929 F.3d 777,  781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.").  Consideration of the Michigan sentencing guidelines minimum range was entirely discretionary at the time the trial court sentenced Petitioner.  Because the guidelines were only discretionary, the consideration of judge-found facts does not implicate Petitioner's constitutional rights.[1]  Petitioner's Sixth Amendment claim is meritless.

---

[1] Moreover, from the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here when the court departed upward from the minimum range established by the guidelines, violates the Sixth Amendment. Petitioner's *Alleyne* claim is meritless whether the guidelines were mandatory or discretionary because the trial court sentenced Petitioner outside the guidelines.

## B.    Eighth Amendment claim

Petitioner also claims that his sentence violates the Eighth Amendment ban against cruel and unusual punishment.  His brief offers several specific complaints:   the sentence is disproportionate, unreasonable, and not individualized.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner attacks his sentences as disproportionate, claiming that proportionality is required by *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-11.  Petitioner's sentence was imposed based on statutory sentencing guidelines.  The "prescribed sentence range" identified in *Milbourn*, however, was not

the minimum sentence range generated by statutory guidelines.  At the time *Milbourn* was decided, there were sentencing guidelines, but they were a creation of the courts.  *See* McComb, *An overview of the second edition of the Michigan sentencing guidelines,* 67 Mich. B. J. 863, 864 (1988) (setting out the history of the development of sentencing guidelines in Michigan through 1988).

In 1998, the Michigan Legislature enacted statutory sentencing guidelines.  Mich. Comp. Laws § 777.1 et seq.  The statutory guidelines permitted departures if there was a "substantial and compelling reason for the departure . . . state[d] on the record . . . ."  Mich. Comp. Laws § 769.34(3).  The guidelines also effectively immunized from state-law the proportionality of minimum sentences that fell within the guidelines range.  Mich. Comp. Laws § 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.").  Because the guidelines were created with reference to the principle of proportionality, further scrutiny of the sentences generated by application of the guidelines was unnecessary.  *People v. Babcock*, 666 N.W.2d 231, 239-241 (Mich. 2003).  The *Babcock* court concluded that minimum sentences outside the guidelines range required a determination whether there was, indeed, a substantial and compelling reason to justify the departure.  *Id*. at 243–44.

*Lockridge* effectively stripped away the requirement that the trial court have a substantial and compelling reason for departing from the sentencing guideline because it was that requirement that, in part, rendered the guidelines mandatory.  *Lockridge*, 870 N.W.2d at 518, 520–21.  Without the "substantial and compelling reason" guidepost, there was no longer a standard by

14

which to judge the propriety of departure sentences.  The *Lockridge* majority held that, going forward, departure sentences would be reviewed for "reasonableness."  *Id*. at 521.

The Michigan Supreme Court elaborated on the meaning of reasonableness in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017).  *Steanhouse* based its definition of a reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Nearly three decades later, the court had come full circle:  a sentence departing from the guidelines was improper if it was disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and/or *Steanhouse* are not cognizable in a habeas corpus action.

Petitioner suggests, nonetheless, that the same proportionality principles are present in the United States Constitution's Eighth Amendment.  The *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910):  "It is a 'precept of justice that punishment for crime

15

should be graduated and proportioned to [the] offense.'" (Pet'r's Br., ECF No. 2, PageID.19.)  But

the quote from *Weems* is somewhat misleading.  *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States,

but one imposed by the supreme court of the Philippines.  Mr. Weems' crime was making two

false entries in a "wages paid" logbook relating to lighthouse services.  His punishment for that

crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal.  Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos.  And the fine and 'accessories' must be brought into view.  The fine was four thousand pesetas,—an excess also over the minimum.  The 'accessories' we have already defined.  We can now give graphic description of Weems's sentence and of the law under which it was imposed.  Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned.  Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council.  These parts of his penalty endure for the term of imprisonment.  From other parts there is no intermission.  His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty.  He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing.  He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude.  Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty.  No circumstance of degradation is omitted.  It may be that even the cruelty of pain is not omitted.  He must bear a chain night and day. He is condemned to painful as well as hard labor.  What painful labor may mean we have no exact measure.  It must be something more than hard labor.  It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution.  In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands.  Moreover, the "precept of justice" referenced by Petitioner was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ."  *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into

17

reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also complains that his sentence was not individualized.  (Pet'r's Br., ECF No. 2, PageID.25–26.)  The concept of an "individualized" sentence has been discussed by the United States Supreme Court, but as a "prevalent modern philosophy of penology," not a constitutional mandate. *Williams v. New York*, 337 U.S. 241, 247 (1949).  Even Michigan Supreme Court authority discusses individualized sentencing as a principle of the modern view of sentencing, not a constitutional requirement.  *See, e.g., People v. Triplett*, 287 N.W.2d 165, 166–67 (Mich. 1980); *see also People v. McFarlin*, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here,[2] that individualized sentences are not constitutionally required.  *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.").  The Sixth Circuit has acknowledged that "there is no constitutional right to

---

[2] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

individualized sentencing in non-capital cases."  *United States v. Odeneal*, 517 F.3d 406, 415

(6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49

F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*,

783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013);

*United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d

1026, 1035 (6th Cir. 1990); *but see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009)

("The government and Defendant both raise arguments about whether there is a constitutional right

to an individualized sentence for non-capital defendants.  It is not fully settled whether there is

such a constitutional right, though some precedent in this Circuit may have suggested otherwise.").

Therefore, Petitioner's claim that he was denied an individualized sentence is not cognizable on

habeas review.

Plaintiff's argument that his sentence is disproportionate, unreasonable, and not

individualized fails to raise a meritorious federal claim.

### C.    Sentence based on inaccurate information

Finally, Petitioner claims that his sentence violates due process because it is

founded upon inaccurate information.  It is well established that a court violates due process when

it imposes a sentence based upon materially false information.  *United States v. Tucker,* 404 U.S.

443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted).  To prevail on

such a claim, the petitioner must show (1) that the information before the sentencing court was

materially false, and (2) that the court relied on the false information in imposing the sentence.

*Tucker*, 404 U.S. at 447.

Petitioner fails to show that the trial court relied on false information when

imposing Petitioner's sentence.  In fact, Petitioner does not identify a single piece of false or

inaccurate information on which the trial court relied.  Instead, Petitioner takes issue with the

conclusions the court drew with regard to Petitioner's "dangerousness."  (Pet'r's Br., ECF No. 2, PageID.27) ("There was much erroneous sentencing information in the instant case . . . petitioner was portrayed as a much more serious offender than he actually is.").  That is not a due process violation.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in

custody in violation of the Constitution and has failed to make a substantial showing of the denial

of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal

would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a

certificate of appealability.


Dated:   January 27, 2021                          /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE